**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERICA ANN DELETTE, | No. 2:14-CV-2024-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c).  Pending before the court are plaintiff's motion for summary judgment (Doc. 11) and defendant's cross-motion for summary judgment (Doc. 16).

/ / /

/ / /

/ / /

## I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 1 2010. In the application, plaintiff claims that disability began on the same date. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 5, 2012, before Administrative Law Judge ("ALJ") R.J. Payne. In a January 7, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): acquired Grade I spondylolischesis at L5-S1 along with degenerative disc disease and development of facet arthropathy of the lumbar (back) spine; a prothrombin gene mutation, heterozygous state with antithrombin III deficiency; a history of chronic obstructive pulmonary disease ("COPD"), a hemmorhagic stroke, a ventrical septal defect, an episode of liver failure, and a ventral hernia;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform a wide range of sedentary work with limitations for no unprotected heights, no moving or vibrating machinery or equipment, no commercial driving, and the ability to elevate her feet six inches, as needed when seated;

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on July 3, 2014, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to

1  support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,
2  including both the evidence that supports and detracts from the Commissioner's conclusion, must
3  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones
4  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's
5  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.
6  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative
7  findings, or if there is conflicting evidence supporting a particular finding, the finding of the
8  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).
9  Therefore, where the evidence is susceptible to more than one rational interpretation, one of
10 which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.
11 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal
12 standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th
13 Cir. 1988).

### III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ improperly rejected the opinions of her treating physician, Richard Musselman, D.O.; (2) the ALJ improperly rejected her testimony as not credible; and (3) the ALJ erred in applying the Medical-Vocational Guidelines.[1]

/ / /
/ / /
/ / /
/ / /

---

[1] Plaintiff also appears to argue that the ALJ failed to consider the combined effects of plaintiff's impairments.  However, plaintiff's counsel offers no discussion in support of this argument in her brief.

### A. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Musselman, the ALJ stated:

> A Lumbar Spine Medical Source Statement of December 3, 2012, by Richard Musselman, D.O., indicated that along with physical limitations, the claimant would be off-tasks 25% or more of the time as pain would interfere with attention and concentration; was incapable of even low stress work; and that she would miss more than four days a month due to impairment related difficulties. (Exhibit 16F). However, his treatment records with the claimant from Canby Family Practice Clinic are void for essentially the entire year of 2011 and limited to just February-March 2012. More importantly, they fail to even remotely support such a limiting assessment and expectation of the claimant's abilities; particularly since his own limited records specifically report that the claimant was independent in all her activities of daily living. Along with her known diagnoses of coagulation defect, congenital lumbosacral spondylolysis, degenerative disc disease, and chronic pain syndrome, his records also show a sudden increase in diagnoses that have not appeared before, i.e., chronic fatigue syndrome, chronic venous embolism and thrombosis, and memory loss. (Exhibits 14F-15F). Again, this assessment was dated nearly nine months after he last saw her.

The court finds no error. Plaintiff outlines medical records from Dr. Musselman which she says "establish[] Plaintiff's medical history and ongoing conditions in the year before and leading up to her alleged onset date (AOD) of June 1, 2010" and "establish ongoing medical impairments reasonably giving rise to documented subjective complaints and consistent with, and/or supporting, functional limitations resulting from her debilitating symptoms." Contrary to plaintiff's characterization of these records, however, the court finds that they do not document objective clinical findings supporting the doctor's extreme limitations. The records cited by plaintiff consistently reflect plaintiff's subjective complaints and Dr. Musselman's diagnoses, but no significant clinical observations on examination. To the contrary, Dr. Musselman's objective observations are unremarkable.

/ / /

/ / /

B. **Credibility Assessment**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v.

Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> For her part, the claimant testified that she lived with her husband and four children (ages 17, 16, 13, 12), and that they had just moved with her parents to Lakehead, California, where they recently began receiving state assistance. She also testified that she did return to work after a "stroke" in 1999, even though this was sporadic. She also reported that due to her gene mutation and antithrombin deficiency, she will suffer from swelling of her feet for the rest of her life and require Coumadin therapy. She further reported that after being on her feet for a couple of hours, she has to elevate her legs. As for activities of daily living, she reported that she did not do a whole lot, and indicated that she took children to their bus stop, sat around in recliner watching television, and that she and her husband shared the housework with him carrying the laundry for her.
>
> The claimant then reiterated her lower extremity complaints and included stabbing pain, shooting nerve pain, and an inability to ride in an automobile or even attend her children's athletic games without needing to get out and walk around. In conclusion, she expressed the significant and importance of the swelling in her legs but then confirmed that she had never tried other treatment methods such as support hoses because they had never been suggested or recommended by her physician.
>
> In assessing the claimant's subjective allegations, the undersigned finds first and foremost that her complaints do not appear in the records. While she was treated one time in 2010 for lower extremity complaints, there was no evidence or indication that this was a chronic or even a recurring problem. The undersigned also notes that for nearly one whole year during this time, she did not even seek or require medical care. The undersigned finds that according to her medical records, she has remained stable throughout the overwhelming bulk of this period.
>
> . . .In sum, the undersigned finds that the claimant's treatment records do not support the frequency and severity of symptoms currently being asserted by the claimant. . . .

The court finds no error. Contrary to plaintiff's apparent argument that the ALJ erred by not providing sufficient reasons for rejecting her testimony as not credible, the ALJ properly cited plaintiff's conservative treatment. Plaintiff fails to cite evidence of record that her treatment was otherwise.

/ / /

/ / /

/ / /

### C.    Application of the Medical-Vocational Guidelines

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[2]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

---

[2]    Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
        Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See <u>Bates v. Sullivan</u>, 894 F.2d 1059, 1063 (9th Cir. 1990); <u>Polny v. Bowen</u>, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See <u>Burkhart v. Bowen</u>, 587 F.2d 1335, 1341 (9th Cir. 1988).

In this case, the ALJ found plaintiff not disabled pursuant to Medical-Vocational Rule 201.28. The ALJ determined that plaintiff's "additional limitations have little or no effect on the occupational base of unskilled sedentary work." Plaintiff argues:

> Here, since the ALJ legally erred in his rejection of the medical opinion of treating physician, Dr. Musselman, and in his rejection of Plaintiff's subjective symptom testimony, both for failure to apply the proper legal standards to evaluating this evidence, the ALJ also legally erred by failing to obtain a vocational expert's opinions. . . .

Because the ALJ did not err with respect to the ALJ's assessment of Dr. Musselman's opinions and plaintiff's credibility, the court disagrees.

///
///
///
///
///
///
///

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 11) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 16) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 24, 2016

　　　　　　　　　　　　　　　　　　　　　　　　
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE